**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**FREDERICK MCKINZIE,**

                              **Plaintiff,**                      07-CV-0733A(Sr)

v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                              **Defendant.**

---

### REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Dkt. #4.

Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for social security disability insurance ("SSDI"), benefits and supplemental security income ("SSI"), benefits. Dkt. #1. The Commissioner moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Dkt. #8. The plaintiff also moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Dkt. #12. For the following reasons, it is recommended that the Commissioner's motion be granted and the plaintiff's motion be denied.

## PROCEDURAL BACKGROUND [1]

Plaintiff filed an application for SSDI on May 31, 2003 and a claim for SSI payments on June 2, 2003, claiming disability due to depression and gout. T69-71. A hearing, as requested by plaintiff, was conducted before Administrative Law Judge ("ALJ"), Linda M. Bernstein on March 24, 2005. T268. Plaintiff was represented by counsel. T268. On July 13, 2005, the ALJ issued a decision denying plaintiff's claim. T17-26. The ALJ's determination became the final decision of the Commissioner on September 6, 2007, when the Appeals Council denied plaintiff's request for review. T7.

## FACTUAL BACKGROUND

Medical & Psychiatric Records

Plaintiff was admitted to the Erie County Medical Center ("ECMC"), on November 6, 2002, following an intentional overdose of Motrin. T215. Plaintiff was discharged on November 13, 2002 with a diagnosis of adjustment disorder with depressed mood and a referral to mental health counseling. T217.

Plaintiff began treatment with Mid-Erie Counseling and Treatment Services ("Mid-Erie"), in November of 2002. T181. On December 18, 2002, plaintiff was diagnosed with moderate symptoms of major depression, recurrent, following his complaints of depression and suicidal thoughts. T179.

---

[1] References to "T" are to the certified transcript of the administrative record filed by the defendant in this action.

Plaintiff was admitted to ECMC on December 25, 2002 following an intentional overdose of Zoloft. T139. He was prescribed 1 mg of Risperdal at bedtime and discharged on December 31, 2002 with a diagnosis of psychotic disorder, not otherwise specified. T140.

Plaintiff returned to Mid-Erie on January 15, 2003, where he continued counseling through June of 2003. T174. Plaintiff continued to receive prescriptions for Risperdal and also added prescriptions for Paxil and Ambien. T174-178. Plaintiff continued to complain that he was hearing voices, but indicated that the voices were not commanding him to do anything and expressed insight into the cause of the voices. T174-178.

Plaintiff presented to Sheehan Memorial Hospital's Ambulatory Services on February 5, 2003 with an acute flare of gout on the left big toe for which he was prescribed colchicine. T172. On February 11, 2003, plaintiff reported that his big toe was much better. T170. Plaintiff failed to keep his appointment on March 11, 2003. T169. On March 21, 2003, plaintiff complained that his gout was acting up and that he was experiencing knee pain, which was deemed the result of walking with a limp due to gout. T169. On April 4, 2003, plaintiff reported that he "feels much better" and "his joint inflamation and gout has resolved." T167. Plaintiff failed to keep his appointment on April 23, 2003 because he was "feeling fine." T165-166. Plaintiff was seen again on May 6, 2003 and reported that he "feels much better." T165. On June 6, 2003, plaintiff reported that he "feels much better;" his gout was "under good control;" and that the

medication was helping. T164. Progress notes dated June 13, 2003, reflect that plaintiff "feels much better" and that his "gout is under good control." T164.

Plaintiff underwent a consultative medical examination on August 28, 2003, with Steven Dina, M.D. T192. Dr. Dina noted that plaintiff was 41 years old and reported an ability to shower and dress daily, cook 5 times a week, clean 2 times a week, and do laundry and go shopping once a week. T192-193. Dr. Dina observed some slight swelling of plaintiff's left big toe, near the first joint, but no redness, and a slight favoring of plaintiff's left leg when plaintiff walked. T193-194. Dr. Dina concluded that plaintiff had "mild limitations" related to gout. T194. Specifically Dr. Dina determined that plaintiff

> has mild limitations in activities that require prolonged standing or walking. Activities that involve foot controls with the left foot would be restricted during flare ups of gout but should not be totally restricted.

T129. Dr. Dina noted swelling of the left toe and tenderness on palpation and a mild limp favoring plaintiff's left leg. T126.

Plaintiff also underwent a consultative psychiatric evaluation by Thomas Dickinson, Ph.D. on August 28, 2003. Plaintiff reported that he had graduated from Emerson Vocational High School and completed one semester at Genesee Community College. T185. Dr. Dickinson found plaintiff to be cooperative with adequate social, expressive and receptive skills; coherent and goal directed thought processes; appropriate affect; and fair insight and judgment. T187-188. Dr. Dickinson also noted a

low-average level of cognitive functioning; limitation in recent and remote memory; and moderate withdrawal. T188-189. Dr. Dickinson opined that plaintiff's prognosis seemed "fair with medical and psychiatric supervision, medication, and counseling," noting

> overall functioning in the low-average range. The [plaintiff] can follow and understand simple job directions and perform tasks of repetitious type with mild supervision. He seems able to maintain his attention and concentration for job tasks and make basic job decisions. The [plaintiff] spoke of difficulty performing physical tasks in a reliable manner. One would want physician recommendations regarding physical skill limitations and tolerance. The [plaintiff] also has difficulty performing job tasks due to mental difficulty. I would think of mild troubles learning new tasks and mild memory difficulties as well. The [plaintiff] would have trouble performing physical tasks, dealing with distractions, and handling stressors. He would also have trouble dealing adequately with co-workers, supervisors, and customers.

T190.

Treatment notes from Sheehan Memorial Hospital's Ambulatory Services indicate that plaintiff was suffering left ankle pain secondary to gout on September 19, 2003.

Plaintiff transferred his care to the Lovejoy-St. Vincent Health Center ("Lovejoy"), where his history of gout was noted and the condition managed with prescription medication during visits on February 26, 2004, July 13, 2004 and September 14, 2004. T235-243. In an undated Medical Report to the Erie County Department of Social Services ("DSS"), plaintiff's doctor at Lovejoy, Dr. Podlas,

diagnosed plaintiff with gout and depression, but noted only lower spine tenderness in his detailed findings pertaining to major disease or disability in support of his opinion that plaintiff could perform light work, *i.e.*, lift 20 ponds occasionally, lift 10 pounds frequently, stand/walk 6 hours a day and use arm/leg controls. T244. In a Medical Report to the DSS dated November 30, 2004, Dr. Podlas diagnosed plaintiff with degenerative arthritis and gout and opined that plaintiff could perform sedentary work, *i.e.*, lift 10 pounds occasionally, stand/walk 2 hours a day, sit 6 hours a day and use hands for manipulation. T245. In a Medical Report to the DSS dated March 22, 2005, Dr. Podlas diagnosed plaintiff with "gouty arthritis," noting increased pain with range of motion of both shoulders and indicating an inability to work "at present," but opining that plaintiff was expected to recover, at least in part, and that significant improvement was likely through medical treatment or rehabilitation. T249.

A psychiatric medical report completed by Dr. Kashian, a psychiatrist at Kaleida Behavioral Health on March 21, 2005, upon plaintiff's transfer of care, opined that plaintiff's ability to engage in sustained work activity was "limited at this time" due to plaintiff's need to remain abstinent and have consistent treatment compliance. T253. On the same date, Dr. Kashian completed a functional capacity assessment form indicating that plaintiff's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently and maintain attention and concentration was fair, as was his ability to understand, remember and carry out simple job instructions, and his ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate

reliability. T263. Plaintiff's ability to maintain his personal appearance was considered good. T263.

A letter dated March 25, 2005 from Spectrum to Social Security indicates that plaintiff had "been involved with Spectrum Care Coordination since January 2003" and that he had

> been involved in four different outpatient mental health/chemical dependency programs, and has had problems with attendance at all four locations at minimally once per week. He complained regularly to me that his gout/arthritis interfered with his ability to get to his visits. During these times, I often visited him to find him home resting.

T265.

Hearing Testimony

Plaintiff testified that he was terminated from his job working a news press because he had missed too many days of work due to his gout. T273. Plaintiff stated that he was unable to obtain new employment because his gout "flares up three, four times a week" and limits his ability to walk to "about 45 minutes until they start hurting." T274-275. When his foot swells, plaintiff stated that he "can't walk at all." T282. Plaintiff denied depression, but claimed to "hear voices" telling him to kill himself approximately three times a week. T276.

Plaintiff lives alone in a lower level apartment. T279. He attends group counseling, but finds it hard to get to the counseling sessions because of his gout. T279 & 282. The ALJ noted medical records indicating that plaintiff's gout was under

control and invited plaintiff's attorney to highlight any medical evidence substantiating plaintiff's claims of frequent flare ups of gout. T285-286.

The vocational expert, Jay Steinbrenner, testified that plaintiff's prior work experience as a cutting machine operator was unskilled work requiring heavy exertion and that his prior work experience as a press feeder was semi-skilled requiring medium exertion. T287-288. When asked to assume that plaintiff was limited to sedentary work with fair ability to interact with others, the vocational expert testified that plaintiff's opportunities for employment would be somewhat limited. T288. However, Mr. Steinbrenner opined that plaintiff could work as a ticket-seller or a cashier at a retail gas station as both such jobs were sedentary, unskilled and required limited social interaction. T289-290.

At the close of the hearing, plaintiff's counsel requested and was granted two weeks to "try to get something further" from Lovejoy. T291. The ALJ directed counsel's "attention to the fact that the form which this same doctor did fill out several times in the past indicated an inability to do light work" while the most recent form "is the first one where he says no work at all" and questioned counsel "what changed or what caused that opinion." T291.

ALJ's Decision

The ALJ determined that plaintiff suffers from gout and depression and that he suffers a mild degree of limitation in his ability to attend to activities of daily

living; a moderate degree of limitation in his social functioning; and a moderate degree of limitation in concentration, persistence and pace. T21-22. As a result of these limitations, the ALJ determined that plaintiff was unable to perform his past relevant work. However, the ALJ found that plaintiff was capable of performing sedentary work and that even with his non-exertional limitations, plaintiff was capable of performing jobs such as ticket seller or retail gas attendant. In reaching her decision, the ALJ specifically noted that:

> Dr. Podlas, an internist, first opined that the claimant was able to perform a range of sedentary exertional activities, in that the claimant was able to lift 10 pounds occasionally, stand and walk for 2 hours per day, sit for 6 hours per day and use his hands for manipulation. In a follow-up report, dated March 22, 2005, Dr. Podlas opined that the claimant was unable to perform even sedentary exertional activities and was unable to perform any work activity. I have considered the opinions of "acceptable medical sources" in reaching my determination as per 20 CFR 404.1513. I essentially agree with Dr. Podlas' first assessment. I reject the second report as inconsistent with the objective findings and treatment notes. No other treating source or consulting examiner found that claimant was unable to perform at least some work-related activities. Additionally, the claimant alleged frequent attacks of gout, and frequent office visits. The record was held open in order to provide the claimant a chance to substantiate this claim. No additional evidence was submitted, however. The claimant did suffer from gout in the summer of 2003, but by August 2003, he was much improved. There is no evidence after that of gout. Giving him the benefit of the doubt on some continuation of gout problems, I have reduced his physical RFC to sedentary.

T23 (citations omitted).

## DISCUSSION AND ANALYSIS

I.      Scope of Judicial Review.

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which a "reasonable mind might accept as adequate to support a conclusion . . .." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999); *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* nor substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). "Further, if supported by substantial evidence, the [Commissioner's] finding must be sustained, 'even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ from the [Commissioner's].'" *Martin v. Shalala,* No. 93-CV-898S, 1995 WL 222059, at *5 (W.D.N.Y. March 20, 1995), *citing Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

Before applying the substantial evidence test, the Court first "reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d at 773; *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). "Failure to apply the correct legal standards is grounds for reversal." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *see Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983) (Commissioner's determination "cannot be upheld when based on an erroneous view of the law that improperly disregards highly probative evidence.").

## II. The Disability Standard.

The standards set forth in the Social Security Act provide that a person will be found to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act clarifies that "an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

In assessing whether a claimant is suffering from a disability, the ALJ is required to follow a five-step sequential evaluation process:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d at 132, *citing DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1986); *see* 20 C.F.R. § 404.1520.

### III. Analysis

**Administrative Record**

Plaintiff argues that the ALJ erred by failing to develop the record to clarify Dr. Podlas' assessment of plaintiff's ability to work. Dkt. #12-2, p.8.

The Commissioner responds that the ALJ had no obligation to seek additional documentation because there were no gaps in the medical record and no

indication that medical records were missing. Dkt. #13, p.5. In addition, the Commission argues the ALJ properly exercised her authority in comparing Dr. Podlas' assessments with the objective medical evidence and the consulting examiner's assessment to determine that plaintiff retained the capacity to perform sedentary work with certain functional limitations. Dkt. #13, pp.3-4.

As an initial matter, the Court rejects plaintiff's suggestion that distinctions in Dr. Podlas' multiple opinions, rendered at different points in time, regarding plaintiff's residual functional capacity evidence an incomplete administrative record. There is no suggestion that medical records were missing from the administrative record or that additional diagnostic tests or consultative examinations were necessary to properly assess plaintiff's capacity to work. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."), *quoting Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

Moreover, it was well within the ALJ's province to consider the variations in Dr. Podlas' assessment of plaintiff's capacity to work during the course of his treatment of plaintiff and to compare those opinions to the underlying treatment notes and consultative examination reports to reach her determination that plaintiff was not disabled. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The deference accorded

to a treating physician's opinion may be tempered by consideration of other factors, including the extent to which the medical evidence supports the doctor's opinion and the consistency of the opinion with the rest of the medical record. See 20 C.F.R. § 404.1527(d).

In the instant case, the ALJ properly weighed Dr. Podlas' March 22, 2005 assessment that plaintiff was unable to work "at present" against the lack of medical documentation of recent attacks of gout, prior treatment notes indicating plaintiff's condition was well controlled by prescription medication, a prior opinion by the same doctor that plaintiff was capable of performing sedentary work, and a consultative medical evaluation opining that plaintiff had only mild limitations related to gout to determine that plaintiff retained the physical capacity to perform sedentary work. T23. Thus, the ALJ's determination that plaintiff retained the physical capacity to perform sedentary work is supported by substantial evidence.

**Residual Functional Capacity ("RFC")**

Plaintiff argues that the ALJ's assessment of his RFC is not supported by substantial evidence because it failed to consider Dr. Kashian's opinion that plaintiff was limited in his ability to engage in sustained work activity. Dkt. #12-2, p.4. Plaintiff argues that this opinion conflicts with Dr. Kashian's opinion that plaintiff retained a fair ability to perform certain job-related functions. Dkt. #12-2, p.6.

The Commissioner argues that Dr. Kashian's opinions do not conflict. Dkt. #13, pp.1-3.

The Court agrees that Dr. Kashian's opinion on the psychiatric medical report dated March 21, 2005 that plaintiff was "limited at this time" in his ability to engage in sustained work activity was not inconsistent with his opinion on a functional capacity assessment form which was also dated March 21, 2005 that plaintiff's ability to perform specified work-related activities on a day-to-day basis in a regular work setting was fair in all categories questioned, except ability to maintain personal appearance, which was noted as good. T262-264. The functional capacity assessment form offered Dr. Kashian the opportunity to assess plaintiff's functional capacity as either: unlimited/very good; good; fair; or poor or none. T253 & T262-264. Fair is defined on that form as: "Ability to function in this area is seriously limited, but not precluded." T262. Because Dr. Kashian's assessment of plaintiff's capacity as limited is not inconsistent with his assessment of plaintiff's capacity as fair, the ALJ's acceptance of Dr. Kashian's assessment is supported by substantial evidence. T23.

**Denial of Claim**

Having properly determined that plaintiff retained the capacity to perform sedentary work activities and a fair capacity to make occupational adjustments, including a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with stress, function independently, maintain concentration and understand, remember and carry out simple work instructions, the

ALJ was entitled to rely upon the testimony of the vocational expert that these limitations would not preclude plaintiff from engaging in substantial gainful activity.

## CONCLUSION

Based on the foregoing, it is recommended that the Commissioner's motion for judgment on the pleadings (Dkt. #8), be **GRANTED** and that plaintiff's motion for judgment on the pleadings (Dkt. #12), be **DENIED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**November 2, 2009**

   <u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**